UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WM CAPITAL MANAGEMENT, INC., as successor in interest to the Federal Deposit Insurance Corporation, as Receiver for Edgebrook Bank, | |
| Plaintiff, | No. 15 C 8105 |
| v. | Judge Thomas M. Durkin |
| ROBERT J. STEJKSAL; LISA HAGADORN; GLOBAL CASH NETWORK, INC.; REPUBLIC BANK OF CHICAGO; UNKNOWN OWNERS AND NON-RECORD CLAIMANTS, | |
| Defendants. | |
| REPUBLIC BANK OF CHICAGO, | |
| Counter-Plaintiff, | |
| v. | |
| WM CAPITAL MANAGEMENT, INC., as successor in interests to the Federal Deposit Insurance Corporation, as Receiver for Edgebrook Bank; ROBERT J. STEJKSAL; LISA HAGADORN; GLOBAL CASH NETWORK, INC.; RIVER NORTH 414, LLC; PREMIUM THEMES, INC.; RIVER PARK AT DIVERSEY CONDOMINIUM ASSOCIATION; UNKNOWN OWNERS AND NON-RECORD CLAIMANTS, | |
| Counter-Defendants. | |

**MEMORANDUM OPINION AND ORDER**

WM Capital Management filed this action seeking to foreclose on (1) a mortgage of property located at 2208 West Diversey Avenue in Chicago, and (2) a security interest it holds in the assets of Global Cash Network. The defendants include the mortgagor, Lisa Hagadorn, and the obligors on the underlying notes, Robert Stejksal and Global Cash Network. Republic Bank has intervened and filed its own complaint alleging that that it also holds (1) a mortgage on 2208 W. Diversey (securing a note granted by counter-defendants River North 414 LLC and Premium Themes, Inc.), and (2) a security interest in Global's assets, and that these interests are prior to WM Capital's interests. After Republic intervened, WM Capital filed an amended complaint containing a claim against Republic (Count IV) that mirrors WM Capital's affirmative defense to Republic's claims. Republic has moved to dismiss Count IV of WM Capital's complaint, R. 94. Republic has also moved to strike certain affirmative defenses raised in response by WM Capital, R. 81; Hagadorn, R. 77; and Stejksal and Global, R. 79. For the following reasons, Republic's motion to dismiss Count IV of WM Capital's complaint is granted; Republic's motion to dismiss WM Capital's affirmative defenses is granted in part and denied in part; and Republic's motions to dismiss Hagadorn's and Stejksal and Global's affirmative defenses are denied.

**Legal Standard**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim

2

showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.'

Motions to strike affirmative defenses are "disfavored" unless they serve to "remove unnecessary clutter from the case." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Striking an affirmative defense may be appropriate where doing so would significantly effect the scope of discovery. Otherwise, it is often simply wasteful make-work better suited for summary judgment. Nevertheless, "[a]ffirmative defenses are pleadings and, therefore, are subject to all the pleading requirements of the Federal Rules of Civil Procedure." *Id.* "While the Seventh Circuit has not addressed whether the *Twombly–Iqbal* standard

3

applies to affirmative defenses, judges in this district have generally found these requirements to apply." *Edwards v. Mack Trucks, Inc.*, 310 F.R.D. 382, 386 (N.D. Ill. 2015).

I.  **Motion to Dismiss Count IV of WM Capital's Second Amended Complaint (R. 94)**

Edgebrook Bank made loans to Global on November 30, 2010 and April 13, 2011. *See* R. 87-1; R. 38-4. Both notes were secured by Global's assets. *See* R. 87-4; R. 38-5. At some point, whether before or after Edgebrook went into receivership, Republic acquired the 2010 note and security agreement, and WM Capital acquired the 2011 note and security agreement. The parties dispute whose security interest takes priority.

In Count IV of its second amended complaint, WM Capital alleges that even if its 2011 security interest in the Global's assets is secondary to Republic's 2010 security interest, the "cross-collateralization" clause in Republic's security agreement securing Republic's 2010 note also secures WM Capital's 2011 note, because it states:

> In addition to the [2010] Note, this Agreement secures all obligations, debts and liabilities of [Global] to [Edgebrook] . . . whether now existing or *hereinafter arising* . . . .

R. 87-9. WM Capital alleges that since its note was issued after the date of Republic's 2010 security agreement, that agreement also serves to secure WM Capital's 2011 note.

The problem with this argument is that WM Capital was not assigned any rights in the November 2010 security agreement. Despite this fact, WM Capital

4

contends that it can benefit from the terms of the November 2010 security agreement because "Edgebrook . . . created an interrelated set of loans, loan obligations, and security agreements cross-collateralizing all of its loans with Global. To try to view these documents as if they were separate and distinct loan packages, *ignores the reality* of what Edgebrook intended to do, and did do." R. 113 at 4 (emphasis added). But WM Capital's argument "ignores the reality" that the notes and security agreements at issue were separately assigned to different entities—namely WM Capital and Republic Bank—and now actually do exist as "separate and distinct loan packages." WM Capital has pointed to no contractual provision or legal authority to support its argument that it should benefit from a security agreement to which it is not a party. Since WM Capital is not a party to the 2010 security agreement, and has not assumed the interests of any original party to the 2010 security agreement, WM Capital cannot assert rights under the 2010 security agreement.

WM Capital also argues that it is a third party beneficiary of Republic's security agreement because it holds a note the 2010 security agreement was originally intended to secure. Presumably, WM Capital intends to argue that it fits the "description of a class" identified by the cross-collateralization clause. *See Hunter v. Old Ben Coal Co.*, 844 F.2d 428, 432 (7th Cir. 1988). That clause, however, did not create a class of potential third party beneficiaries to the agreement; rather, it further encumbered the collateral as security for any future obligations between the original parties to the security agreement. Providing that

5

the collateral will secure notes that are delivered in the future does not expand the class of persons who have rights to that security. Edgebrook was originally the secured party, and Republic was later assigned those rights. WM Capital was not assigned any rights under the 2010 security agreement. Just because WM Captial now holds a note that might have been secured by the collateral identified in the 2010 security agreement (but was not) does not show that WM Capital has any such rights. Thus, WM Capital's argument that it is a third party beneficiary of the 2010 security agreement does not save Count IV of its complaint, and it is dismissed.

## II. Motion to Strike WM Capital's Affirmative Defenses to Counts I and III of Republic's Complaint (R. 81)

### A. Affirmative Defense to Count I

In addition to its loans to Global, Edgebrook made a loan to defendants River North 414 LLC and Premium Themes, Inc. (the "Premium Loan"). R. 34-2. The Premium Loan was secured by a mortgage of 2208 West Diversey made by Lisa Hagadorn. R. 34-1. At some point, Republic was assigned the Premium Loan and the Hagadorn mortgage, and seeks to foreclose on it. As an affirmative defense (and in support of its own claim for foreclosure on 2208 West Diversey) WM Capital alleges that, pursuant to a "Terms Agreement," Edgebrook released the Hagadorn mortgage as security for the Premium Loan, and transferred it to be security for a different loan, which loan is now held by WM Captial. *See* R. 62-1.

Republic makes three arguments as to why this affirmative defense should be stricken. First, Republic argues that the Terms Agreement does not satisfy the Illinois Credit Agreements Act (the "CAA"). The CAA provides in relevant part: "A

6

debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing . . . and is signed by the creditor and the debtor." 815 ILCS 160/2. Republic argues that since the release was only signed by Edgebrook and Hagadorn, and not River North 414 LLC and Premium Themes, Inc.—the obligors on the original underlying note—it fails to satisfy the CAA.

The problem with this argument is that the CAA applies only to "actions" by "debtors." *See Simplex, Inc. v. Glob. Source One Int'l, Inc.*, 2014 WL 3028321, at *4 (C.D. Ill. July 3, 2014) ("A writing signed by both parties is not required for a *creditor* to maintain an action related to a credit agreement.") (emphasis in original); *Household Commercial Fin. Servs. Inc. v. Suddarth*, 2002 WL 31017608, at *4 (N.D.Ill. Sept. 9, 2002) (noting that "the [CAA], however, does not by its plain language place any restrictions on the actions of creditors"). Republic does not argue that WM Capital is a debtor, so the Court will not strike its affirmative defense based on the CAA.

Second, Republic argues that the Terms Agreement does not satisfy the Illinois Mortgage Act ("IMA") because it was not recorded. But Republic has pointed to no provision in the IMA that requires a release to be recorded in order to be effective. Republic cites a provision of the IMA providing that a "release shall be *entitled* to be recorded," 765 ILCS 905/2 (emphasis added), but not that it must be recorded. Whether the Terms Agreement was recorded may affect its priority with respect to other security interests. But the mere fact that it was not recorded does

7

not violate the IMA provision Republic cites, and the Court will not strike the affirmative defense on that basis.

Third, Republic argues that enforcement of the Terms Agreement is precluded by 12 U.S.C. § 1823(e)(1)(C), because it was not "approved by the board of directors" of Edgebrook. But as WM Capital points out "it is not required to include fact pleadings as to every possible counterargument," and there is nothing on the face of the pleadings that requires the Court to find that Edgebrook's board of directors did not approve the Terms Agreement. The Court will not strike WM Capital's affirmative defense to Count I of Republic's complaint on this basis either.

### B. Affirmative Defense to Count III

Republic also argues that WM Capital's affirmative defense to Count III of Republic's complaint must be stricken. This affirmative defense is based on the same allegations as Count IV of WM Capital complaint, which the Court has already dismissed. Thus, WM Capital's affirmative defense to Count III of Republic's complaint is stricken.

### III. Motion to Strike Hagadorn's Affirmative Defense (R. 77)

Republic also seeks to prevent Hagadon from using the Terms Agreement as a basis for an affirmative defense. Republic argues that the CAA requires the Terms Agreement to have been signed by the obligors on the note that Hagadorn's mortgage secures, because they are also "debtors" on the "credit agreement," which according to Republic includes both the mortgage and note.

The problem with this argument is that that mortgage by itself, separate from the note, is plausibly a "credit agreement." The CAA defines a "credit agreement" as an "agreement or commitment by a creditor to lend money or extend credit or delay or forbear repayment of money." 815 ILCS 160/1(1). Even though Edgebrook did not lend money to Hagadorn, Edgebrook agreed to lend money to River North 414 and Premium Themes pursuant to the terms of the mortgage. Although the loan was not made to Hagadorn, the mortgage nevertheless includes an agreement by Edgebrook to lend money, thus making the mortgage a "credit agreement" for purposes of the CAA. Republic has cited no authority to the contrary.

The only parties to the mortgage are Edgebrook and Hagadorn, and both of them signed the Terms Agreement release. Since the mortgage itself is plausibly the relevant "credit agreement," the Terms Agreement plausibly complies with the CAA's requirement that any "amend[ment] [to] an existing credit agreement," 815 ILCS 160/3(3), be "signed by the creditor and the debtor." *Id.* 160/2.

Furthermore, even if the relevant "credit agreement" included both the mortgage and the note, the CAA can plausibly be interpreted to require credit agreements to be signed only by "the debtor" who seeks to rely on the credit agreement as the basis for a claim or defense. Under the CAA, "[a] debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement . . . is signed by the creditor and the debtor." 815 ILCS 160/2. Republic interprets this clause to mean that "all" of the "debtors" to a certain "credit

9

agreement" must sign any amendment to the credit agreement. But the plain language of the statute restricts the actions of "*a* debtor," and requires a signature only from that singular debtor who seeks to "maintain an action." The use of the singular indefinite article "a" at the beginning of the statutory clause implies that there may be more than one debtor to the relevant credit agreement, but the statute regulates one debtor at a time. By the end of the statutory clause, the singular definite article "the" is used to refer to "the debtor," upon whom the statute imposes its requirements. Thus, the statutory language does not necessarily require the signatures of all debtors to a credit agreement for "the debtor" to bring an action based on the amendment.

This analysis comports with the CAA's purpose as a "strong form of the statute of frauds." *Help At Home Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 754 (7th Cir. 2001). The actual statute of frauds requires certain agreements to be in writing and "signed by the party to be charged." 740 ILCS 80/1. The CAA goes a step further and also requires the writing to be signed by the party doing the charging, i.e., the debtor who brings an action. But both statutes are focused on ensuring that certain legal actions are based on written agreements that are signed by the parties to those agreements. Here, Edgebrook and Hagadorn were the parties to the mortgage, and also signed the Terms Agreement. Those facts plausibly show compliance with the CAA.

The only authority Republic cites to support its argument to the contrary is *Van Pelt Construction Co. v. BMO Harris Bank, N.A.*, 8 N.E.3d 554 (Ill. App. Ct. 1st

Dist. 2014). In that case, a bank bought and mortgaged property. The note underlying the mortgage also was separately guaranteed by the owners of the bank. The mortgagee sought to foreclose, and thought it had reached a settlement agreement with the bank and the guarantors. But not all the guarantors signed the settlement agreement. On that basis, the court found that the settlement agreement violated the CAA. *Van Pelt* is not analogous to this case. In *Van Pelt*, the settlement agreement purported to bind the guarantors, whereas the release at issue here does not purport to bind the obligors on the underlying note. Thus, Republic's motion is denied without prejudice to re-raising this issue on summary judgment.

**IV. Motion to Strike Stejksal and Global's Affirmative Defense (R. 79)**

Republic argues that Stejksal and Global's affirmative defense based on the Terms Agreement release should be stricken for the same reasons Republic argues that Hagadorn's affirmative defense should be stricken. The motion to strike Stejksal and Global's affirmative defense is denied for the same reasons that the motion to strike Hagadorn's affirmative defense is denied.

**Conclusion**

For the foregoing reasons, Republic's motion to dismiss Count IV of WM Capital's complaint, R. 94, is granted; Republic's motion to dismiss WM Capital's affirmative defenses, R. 81, is granted to the extent that WM Capital's affirmative defense to Count III of Republic's complaint is dismissed, and denied with respect to WM Capital's affirmative defense to Count I of Republic's complaint; and Republic's

motions to dismiss Hagadorn's and Stejksal and Global's affirmative defenses, R. 77; R. 79, are denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: October 14, 2016